```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

**LOUIS PILLETTE, ET AL**                             **CIVIL ACTION**

**VERSUS**                                            **NO. 11-2300**

**M-I L.L.C.**                                        **SECTION: "B"(5)**

### ORDER AND REASONS

### Nature of Motion and Relief Sought:

Before the Court is Defendant M-I L.L.C.'s ("MI") Motion for Summary Judgment and responsive pleading (Rec. Doc. Nos. 14 and 29). In response, Plaintiffs filed an opposition (Rec. Doc. No. 20). Subsequently, Defendant filed a Supplemental Memorandum in Support of the Motion for Summary Judgment (Rec. Doc. No. 50). Accordingly, and for the reasons articulated below, **IT IS ORDERED** that Defendant M-I L.L.C.'s ("MI") Motion for Summary Judgment (Rec. Doc. No. 14) is **GRANTED**.

### Cause of Action and Facts of the Case:

This lawsuit arises from the allegedly racial and age-specific discriminatory employment actions taken by Defendant MI. Plaintiffs Louis Pillette and Bert Grant are former employees of MI. (Rec. Doc. No. 14, at 1). MI operates a facility in Port Fourchon, Louisiana, supplying deep water drilling rigs in the Gulf of Mexico with drilling fluids. (Id.). Pillette first worked as a yard hand,

then later as a mud hand and received several outstanding evaluations from his supervisors. (Id.). Grant was a yard hand who transferred over to Port Fourchon from MI's Venice yard after Hurricane Katrina, and was known for his desire to follow company policy. (Id.). MI had a reduction in force during the moratorium prohibiting the drilling for oil in the Gulf of Mexico in 2010 (the "Moratorium"). (Id.). During the moratorium, MI attempted to temporarily transfer employees to sister companies.[1] (Id.). Plaintiffs were offered several transfer opportunities, but declined them all. (Id.). Ultimately, MI laid off a total of 15 employees, including Plaintiffs, leaving only a skeleton crew to work during the moratorium. (Id.). Between the transfers, layoffs and retained crew, all included white and black employees and those both under and over 40 years old. (Id.).

Here, Plaintiffs contend that their layoffs during the moratorium were the result of intentional discrimination, prohibited under Louisiana's Employment Discrimination Law ("LEDL"). (Id. at 2).

---

[1] These transfers opportunities included: 1) mud mixing positions in Hodge, Louisiana, neither Plaintiff requested this transfer (Pillette Dep. at 203; Domangue Decl.); 2) yard and mud positions with Wilson, a sister company with locations in Amelia, Louisiana and Theodore, Alabama, Grant initially accepted this position, but then declined because it involved fewer hours (Grant Dep. at 91, 96-97, 101-04; 3) mixer position in Lafayette, Louisiana, Pillette declined this position, which was thirty minutes from his home, because it "wasn't a real job." (Pillette Dep. at 174-75, 178; Domangue Decl.); 4) mud man position in Eastern Texas, Pillette declined the transfer because he believed it was "all a lie" (Pillette Dep. at 180, 196-97). The position was then offered to Grant, and he, too, declined because he was not "into mixing mud." (Grant Dep. at 115).

**Law and Analysis:**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id*. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter.*, Inc. 7 F.3d 1203, 1207 (5th Cir. 1993).

***Plaintiffs cannot establish a prima facie discrimination claim in this reduction in force case***.

Given that the instant layoff is the result of a reduction in force process, the appropriate *prima facie* elements are those for a reduction in force discrimination claim. Plaintiffs must establish (in addition having protected status and there being an adverse employment decision) that they were qualified to assume another position at the time of discharge and evidence, from which a fact finder might reasonably conclude that the employer *intended to discriminate* in reaching the decision at issue. *Ortiz v. Shaw Group, Inc.*, 250 Fed. Appx. 603, 606 (5th Cir. 2007).

Here, regarding the third prong, Plaintiffs provide no evidence, outside of their own depositions, that they were qualified to assume another position at the time of discharge. Moreover, their own testimony established that MI employed a reduction in force process because there was little to no demand for their product, and that there was little yard or mud work elsewhere. Grant noted "[MI] scaled back [production] because there wasn't no demand for it. Of course. Yes." (Grant Dep. at 82). Moreover, Pillette conceded the same, "[t]hey couldn't keep us all busy. No." (Pillette Dep. at 171). As such, Plaintiffs cannot demonstrate they were qualified for other available positions, because there were no other available positions.  Moreover, the four transfer positions that Domangue offered to Plaintiffs were all declined by Plaintiffs. Thusly, Plaintiffs have failed to establish the third element of their *prima facie* case.

Furthermore, regarding the fourth prong, the evidence must show that "[MI] consciously refused to consider retaining or relocating Plaintiff[s] *because of age [or race], or that the [MI] regarded age [or race] as a negative factor in such consideration.*" *Rousselle*, 963 So.2d at 478 (emphasis added). The numbers indicate that MI did not regard race as a negative factor during the RIF process because it retained seven African-Americans and twenty-two employees over the age of 40. (Rec. Doc. No. 29 at 3; Undisputed Fact 22; Domangue Decl.) Furthermore, ten white employees and four under 40 were, like Plaintiffs, included in the fifteen workers who were laid off. (Id.). And three of the 20 transferred were African-American and nine were under 40. (Id.). As such, the evidence shows that the RIF selection process was race and age neutral. Furthermore, Plaintiffs cannot show that MI *consciously* refused to consider relocating Plaintiffs because of age or race, as Plaintiffs themselves conceded that they were offered transfers, which they rejected. (Undisputed Facts 33, 36, 38, 39). As such, Plaintiffs provide no evidence to explain why MI would have retained seven black employees and twenty-two over 40 employees if the goal was to terminate these employees. *Minor v. Dow Chem. Co.*, No: 09-932-SS, 2012 U.S. Dist. LEXIS 50223, *25 (M.D.La. April 10, 2012) (granting summary judgment where "[plaintiff] offers no explanation for why [the decision-maker] retained eight operators fifty years old and above and laid off operators younger than [plaintiff], including two in their twenties, if the [decision-

maker]'s objective was to get rid of the old operators and keep the young operators."). Given this, Plaintiffs cannot satisfy the last two prongs to establish a *prima facie* case for age and race discrimination in this reduction in force case.

***MI has a legitimate, non-discriminatory reason for Plaintiffs' layoff***.

Even if Plaintiffs could establish a *prima facie* case of race and age discrimination, Fifth Circuit precedent holds that a reduction in force is a legitimate, non-discriminatory reason for layoffs. *EEOC v. Texas Instruments*, 100 F.3d 1173, 1181 (5th Cir. Tex. 1996) ("in the context of a reduction in force, which is itself a legitimate, nondiscriminatory reason for discharge, the fact that an employee is qualified for his job is less relevant—some employees may have to be let go despite competent performance."). Moreover, Plaintiffs themselves concede that MI's reduction in force "qualified under the jurisprudence as a legitimate, non-discriminatory reason." (Rec. Doc. No. 20 at 12). Therefore, MI has established a legitimate, non-discriminatory reason for Plaintiffs' layoff.

***Plaintiffs cannot establish that MI's legitimate, non-discriminatory reason was pretextual.***

The Fifth Circuit has held that where an employer has articulated a rational justification for terminating an employee, and the facts supporting that justification are not seriously disputed, the task of proving pretext becomes quite difficult.

*Chaney v. New Orleans Pub. Facility Mgt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999). Moreover, "an employee's subjective belief of discrimination alone is not sufficient to warrant judicial relief." *Moore v. Solar Group*, 311 Fed. Appx. 722, 723-24 (5th Cir. 2009)(citations omitted).

Here, Plaintiffs have conceded that the moratorium caused MI to reduce its workforce. Grant noted "[MI] scaled back [production] because there wasn't no demand for it. Of course. Yes." (Grant Dep. at 82). Further, Pillette conceded the same, "[t]hey couldn't keep us all busy. No." (Pillette Dep. at 171). Moreover, Plaintiffs concede that they refused at least four transfer opportunities, and they knew that if they refused transfers, they would be subject to layoff. (Pillette Dep. at 174, 202; Grant Dep. at 88, 96-97, 115).

The Court notes that Plaintiffs assert little more than their own opinion as to their superior performances relative to other employees. Yet, "merely disagreeing with an employer's negative employment assessment is insufficient to show pretext." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002). Furthermore, Plaintiffs themselves fail to clearly proffer any specific showing of how their age or race affected their layoff. Instead, Grant merely suggests that Domangue did not like him:

Q: Okay. What do you think is the reason why you were separated?

A: **Truthfully, because Ron Domangue didn't like me for some reason** because I was vocal, I was always respectable. I respected him as a supervisor. But when things wasn't right, I let him know in a respectable way.

(Grant Dep. at 128)(emphasis added).

Further, Pillette testifies that he knows African-Americans stayed at Port Fourchon after the reduction in force:

Q: Did you know that there were African-Americans who stayed at Port Fourchon and are still there today?

A: Yes, ma'am. But that's not my issue. I'm just worried about this African-American.

(Pillette Dep. at 267). Moreover, Pillette testifies about the transfer of another black yard hand to his hitch to support his argument that Plaintiffs' layoffs were racially motivated, suggesting that MI was attempting to hide their discriminatory behavior behind the retention of another African-American. (Pillette Dep. at 311-13). However, such testimony clearly cuts against Plaintiffs' argument that Plaintiffs' layoff was racially motivated.

Finally, Plaintiff's pretextual argument is further discredited by the same-actor inference, which is a presumption that discrimination is not the motive behind the plaintiff's discharge when a plaintiff is discharged by the same person who hired or promoted him. *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996). "Claims that employer animus exists in termination but not in hiring seem irrational," and "it hardly makes sense to hire workers from a group one dislikes (thereby incurring psychological costs of associating with them), only to fire them once they are on the job." *Id*. MI submits that the same-actor inference is applicable here because: 1) Domangue hired Pillette, accepted Grant as a transfer employee and provided both Plaintiffs

multiple promotions, and 2) Domangue was the primary decision-maker in selecting Plaintiffs for layoff. (Pillette Dep. at 93,266, 349; Grant Dep. at 135). As such, here the same-actor inference negates Plaintiffs' claims of race and age discrimination.

Here, Plaintiffs fail to submit more than subjective beliefs of race and age discrimination, which "alone [are] not sufficient to warrant judicial relief." *Moore*, 311 Fed. Appx. at 723-24.

Accordingly, and for the reasons pronounced above, **IT IS ORDERED** that Defendant M-I L.L.C.'s ("MI") Motion for Summary Judgment (Rec. Doc. No. 14) is **GRANTED**.

New Orleans, Louisiana, this 29th day of October, 2012.

UNITED STATES DISTRICT JUDGE